**Affirmed and Opinion Filed this June 30, 2014**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-13-00051-CV

### WINSTON ACQUISITION CORP, Appellant
### V.
### BLUE VALLEY APARTMENTS, INC., Appellee

**On Appeal from the 116th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-11-01373**

## OPINION

Before Justices Moseley, O'Neill, and FitzGerald
Opinion by Justice FitzGerald

This breach of contract case arises out of a failure to consummate the sale of an apartment complex. Following a bench trial, the trial court entered judgment against buyer Winston Acquisition Corp. ("Winston") in favor of seller Blue Valley Apartments, Inc. ("Blue Valley"). In five issues on appeal, Winston argues the trial court erred in its determination that Winston breached the contract and Blue Valley was entitled to recover the earnest money deposit and its reasonable attorney's fees. Concluding Winston's arguments are without merit, we affirm the trial court's judgment.

## BACKGROUND

On November 15, 2010, Winston and Blue Valley entered into a contract for the sale of the Phoenix Place Apartments in Dallas, Texas for $1,755,000 (the "Contract"). The Contract

defines Winston as the Buyer and Blue Valley as the Seller. The closing date of the sale was set for December 15, 2010, and the parties agreed that time was of the essence. During the negotiations, Winston requested the inclusion of a provision in the Contract that would allow either party to seek an extension of the closing date for a $10,000 fee. Blue Valley agreed, and the extension provision was included in the Contract.

The Contract provided for Winston's payment of a $150,000 earnest money deposit. After the Contract was executed, Winston delivered the earnest money deposit to the escrow agent. Pursuant to the Contract, the earnest money deposit was "immediately non-refundable and fully earned unless [the Contract was] properly terminated by [Winston]."

The Contract afforded Winston a due diligence period, from November 15 through November 30. Certain due diligence items were identified in the Contract, including Winston's right to inspect the property for environmental issues and Blue Valley's delivery of a title commitment survey and "Environmental Site Assessment" materials. The portion of the contract at issue here, section 3.3.2(f), provides in pertinent part:

> [w]ithin three (3) business days following the execution of this Agreement, Seller shall deliver to Buyer the following items . . . (ii) a form entitled "Disclosure of Information on Lead-Based Paint and/or Lead-Based Paint Hazards Leading Warning Statement" ("Disclosure") in the form of Exhibit "I" attached hereto, which disclosure shall be completed and initialed by the Seller, Buyer, and Agent (defined below) upon execution of this Agreement by the parties.

Exhibit I states, "Buyer has received the pamphlet 'Protect Your Family from Lead in Your Home'" (the "EPA Pamphlet"). Blue Valley initialed Exhibit I and delivered it to Winston, but did not provide the EPA Pamphlet. Winston did not initial Exhibit I.

The EPA Pamphlet is a generic pamphlet created by the United States Environmental Protection Agency, the Consumer Product Safety Commission, and the United States

Department of Housing and Urban Development. In essence, the EPA Pamphlet offers advice, resources, and information concerning the danger of exposure to lead-based paint.

The day following execution of the Contract, Blue Valley delivered a Phase I Report to Winston. The report advised, "[b]ased upon the 1973 date of construction, there is a potential that lead-based paints were used during the building construction." Therefore, the report recommended that a "Lead-Based Paint Operations and Maintenance Plan" be developed at the property. Blue Valley also provided Winston with a title commitment report and survey.

In the event Blue Valley was unable to satisfy certain conditions, the Contract required Winston to notify Blue Valley before the expiration of the due diligence period. To this end, section 3.4 of the Contract stated:

> Buyer shall notify Seller of Buyer's disapproval of the matters, or *inability to satisfy the conditions, described in Section 3.3* by written notice delivered to Seller and title company prior the expiration of the Due Diligence Period (or such other date as may be specified therein). *Buyer's failure to provide notice of disapproval of the matters, or inability to satisfy the conditions, described in Section 3.3 prior to the expiration of the Due Diligence Period* (or such other date as may be specified therein) in the manner described herein *shall be deemed Buyer's approval and/or satisfaction of such matters and conditions. In no event shall Buyer have the right to disapprove any such matters after the expiration of the Due Diligence Period* (or such other date as may be specified therein)

(emphasis added). During the due diligence period, Winston complained only about the title commitment, identifying ten objections. Although the record does not affirmatively reflect that these objections were resolved, there is nothing to suggest that Winston ever relied on these objections to terminate the Contract, nor does Winston rely on the objections in this appeal.

The Contract also specified the procedure Winston was to follow if it chose to terminate the Contract based on Blue Valley's failure to perform. Section 8.2, entitled "Buyer's Remedies," states:

> In the event Seller fails to perform any act required to be performed by Seller pursuant to this Agreement on or before the Closing Date, then

> Buyer shall execute and deliver to Seller written notice of such breach, which notice shall set forth complete information about the nature of the breach. Seller shall have a period of ten (10) days to cure such breach . . . .

A few days before closing, Winston requested an extension with a waiver of the $10,000 extension fee. On December 10, 2010, Blue Valley advised Winston that it would not waive the extension fee. That evening, Winston sent Blue Valley a letter that read:

> This letter serves as formal notice that Buyer rescinds and revokes its agreement to the Contract for Seller's failure to provide the EPA-approved information pamphlet on identifying and controlling lead-based paint hazards ("Protect Your Family From Lead In Your Home") as required by applicable law, and to the extent the Contract was valid, and Buyer does not believe it was without said pamphlet. Buyer hereby terminates the Contract. Buyer requests a return of its earnest money.

(the "Termination Letter"). In a letter dated December 14, 2010, Blue Valley responded to the Termination Letter. Blue Valley's response stated that Winston could not rely on the EPA Pamphlet to avoid its closing obligations because the issue had not been raised during the due diligence period and because federal law prohibits use of this requirement to avoid contractual obligations. Winston replied the same day, asserting that in the absence of the EPA Pamphlet, there was no obligation to close. Blue Valley appeared for the scheduled closing on December 15, but Winston did not.

Winston subsequently filed suit against Blue Valley for breach of contract. Before it was served with Winston's suit, Blue Valley filed suit for breach of contract against Winston in the same court. The two suits were consolidated, and the trial court conducted a bench trial.

At the conclusion of the trial, the court entered judgment in favor of Blue Valley on its breach of contract claim, and awarded Blue Valley the earnest money deposit, pre- and post-judgment interest, costs, and attorney's fees. The judgment further provides that Winston take nothing on its claim.

The trial court also made findings of fact and conclusions of law which include, *inter alia*, conclusions that Winston breached the Contract by failing to close on the apartment complex, Blue Valley did not breach the Contract by failing to provide the EPA Pamphlet, and Blue Valley's failure to provide the EPA Pamphlet did not justify Winston's failure to close. The trial court further concluded that Winston did not properly terminate the Contract in accordance with section 8.2.

## ANALYSIS

*Breach of Contract*

In its first three issues, Winston asserts the trial court erred in concluding: (a) that Winston breached the contract by failing to close at the appointed time; (b) that Blue Valley did not breach the contract by failing to timely deliver the EPA Pamphlet; and (c) that Blue Valley's performance was excused.

It is a basic premise of contract interpretation that unambiguous contracts are construed as a matter of law. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983); *First Union Nat'l Bank v. Richmont Capital Partners I, LP*, 168 S.W.3d 917, 924 (Tex. App.—Dallas 2005, no pet.); *Pratt–Shaw v. Pilgrim's Pride Corp.*, 122 S.W.3d 825, 829 (Tex. App.—Dallas 2003, pet. denied). The entire instrument, taken by its four corners, must be read and considered to determine the true intention of the parties. *First Union*, 168 S.W.3d at 924. Terms are given their plain, ordinary, and generally accepted meaning, unless the instrument shows the parties used them in a technical or different sense. *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996).

When interpreting a contract, courts examine the entire agreement in an effort to harmonize and give effect to all provisions of the contract so that none will be meaningless. *MCI Telecomms. Corp. v. Tex. Util. Elec. Co.*, 995 S.W.2d 647, 651 (Tex. 1999); *First Union*, 168

S.W.3d at 924; *Pratt–Shaw*, 122 S.W.3d at 829. Courts presume the parties to a contract intend every clause to have some effect. *Heritage Res*., 939 S.W.2d at 121. Where, as here, a contract is unambiguous, its construction is a question of law that we review de novo. *Tawes v. Barnes*, 340 S.W.3d 419, 425 (Tex. 2011).

The parties devote considerable argument to the merits of whether Blue Valley was or was not required to provide the EPA Pamphlet in conjunction with exhibit I, and whether the EPA Pamphlet was or was not material to the Contract. But we need not reach these issues, nor need we consider whether Blue Valley's failure to provide the EPA Pamphlet was excused. The Contract specified the time period in which Winston was to object to any deficiencies, and further specified the date the Contract was to close. The record reflects that Winston failed to comply with both provisions.

The Contract provided that the parties were obligated to close on December 15, 2010, subject to any extension agreed upon by the parties pursuant to payment of the $10,000 fee. There was no extension of the closing date. Pursuant to the express terms of the Contract, Winston was required to notify Blue Valley, prior to the expiration of the due diligence period, regarding any "disapproval of the matters, or inability to satisfy the conditions, described in section 3.3." Blue Valley's obligation to deliver exhibit I (which contains a buyer's acknowledgment of receipt of the EPA Pamphlet) is among those items specified in section 3.3.

The Contract defined the due diligence period as "the period beginning on the Effective Date and ending at 5:00 p.m. Central Time fifteen (15) days thereafter." The "Effective Date" is also a defined term, described as "the latest date upon which an authorized representative of both Buyer and Seller have executed this Agreement." The record reflects that Blue Valley executed the Contract on November 12, 2010, and Winston's signature is dated November 15, 2010.

Therefore, using November 15 as a starting point, the due diligence period expired on November 30, 2010.

Winston did not object to the lack of an EPA Pamphlet before the due diligence period expired on November 30. In fact, Winston did not raise the issue until December 10, after Blue Valley refused to waive the extension fee. The Contract expressly provides that Winston's failure to provide notice of "disapproval of the matters or inability to satisfy the conditions" before the expiration of the due diligence date "shall be deemed Buyer's approval and/or satisfaction of such matters and conditions." The Contract further states, "[i]n no event shall Buyer have the right to disapprove any such matters after the expiration of the Due Diligence Period."

Winston insists section 3.4 of the Contract should be construed only to require an objection to the content of documents received during the due diligence period, rather than an objection that documents were not received. According to Winston, to interpret the Contract otherwise nullifies another section of the Contract (section 3.2) that allows waiver of conditions in writing. We reject this proposed construction as contrary to the express language of the Contract.

The express language of the Contract does not specify that Winston is required to object only to materials it received during the due diligence period. Instead, the Contract requires objection to signify "disapproval of matters" or "inability to satisfy conditions." We decline to apply provisions that do not exist in the plain language of the Contract. *See Lewis v. Foxworth*, 170 S.W.3d 900, 903 (Tex. App.—Dallas 2005, no pet.); *see also Lawrence v. CBD Servs., Inc.*, 44 S.W.3d 544, 533 (Tex. 2001) (cautioning courts should not by judicial fiat insert non-existent language into statutes or contracts).

Our refusal to construe the Contract as Winston suggests does not render section 3.2, (allowing written waiver of conditions) a nullity. Ever mindful of the principle that no one

phrase, sentence or section of a contract should be isolated and considered apart from other provisions of the contract, we review sections 3.2, 3.3, 3.4 in an effort to harmonize the expression of the parties' intent. *See Forbau v. Aetna Life Ins. Co.,* 876 S.W.2d 132, 134 (Tex. 1994).

Section 3.2 specifies that escrow is to close on the closing date provided that all conditions "have been satisfied or waived in writing." Use of the disjunctive "or" signifies two alternatives: satisfied or waived in writing. *See Samano v. Sun Oil Co.,* 621 S.W.2d 580, 584 (Tex. 1981) (discussing use of disjunctive).

Section 3.3 identifies buyer's conditions to closing, which include performance and satisfaction of covenants (section 3.3.1), inspection (section 3.3.2), title commitment and survey (3.3.3), environmental site assessment (3.3.4), and due diligence items (3.3.5). Blue Valley's obligation to deliver exhibit I (which acknowledges receipt of the EPA Pamphlet) is set forth in one of several subsections that appear under the heading "Inspection." The inspection paragraph begins with an express reference to the due diligence period that states: "[b]uyer's approval or deemed approval of the condition of the Property prior to the expiration of the Due Diligence Period and pursuant to the following . . . ." This reference to the due diligence period, as well as to "deemed approval" is indicative of the parties' intent to include all of the enumerated conditions, including the delivery of exhibit I, as subject to being "deemed satisfied or approved" in the absence of a timely objection as described in section 3.4.

Section 3.4 requires Winston to notify Blue Valley within the due diligence period of any failure to satisfy conditions. Pursuant to this section, a condition will be "deemed approve[d] and/or satisf[ied]" in the absence of an objection.

We cannot read select sections of the Contract in isolation. Rather, we must read all sections in harmony so as to give effect to the entire agreement. *See Worldwide Asset*

*Purchasing, L.L.C. v. Rent-A-Center E., Inc.*, 290 S.W.3d 554, 560–61 (Tex. App.—Dallas 2009, no pet.). The plain language of the Contract, viewed in the context of the entire agreement, reflects that Winston can waive performance of the conditions described in section 3.3, such as title commitment, site assessment, and inspection, if it does so in writing. Such a waiver would relieve Blue Valley of its obligation to perform the condition. Section 3.4 addresses a situation in which the condition has not been expressly waived, but is deemed satisfied or approved. This deemed satisfaction or approval results if Winston fails to object within the due diligence period. Section 3.4 defines a finite time — the due diligence period — for Winston to object to Blue Valley's failure to perform the specified conditions and covenants. Taken as a whole, the Contract reflects that a condition may be waived in writing, satisfied by performance, or deemed satisfied by a failure to object to non-performance. These alternatives are not inconsistent or in conflict.

The trial court concluded that Winston waived its right to complain that Blue Valley did not provide the EPA Pamphlet because it did not do so within the time prescribed in section 3.4. Thus, to the extent the condition of inspection and delivery of exhibit I also required Blue Valley to provide the EPA Pamphlet, the requirement was deemed satisfied or approved. We conclude the trial court did not err in its determination.

The trial court further concluded that Winston breached the Contract by failing to close on the sale of the apartment complex. A breach of contract occurs when a party fails to perform an act that it has expressly or impliedly promised to perform. *Stewart v. Sanmina Tex., L.P.*, 156 S.W.3d 198, 214 (Tex. App.—Dallas 2005, no pet.). The elements of a claim for breach of contract are: (1) existence of a valid contract; (2) performance or tentative performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damage resulting to the plaintiff from the breach. *Id.*

Having waived its right to complain about the lack of an EPA Pamphlet, Winston was obligated to close on December 15, 2010. Winston failed to do so. Therefore, the trial court did not err in concluding Winston breached the Contract by failing to close at the appointed time. Winston's first, second, and third issues are overruled.

*Attorney's Fees and Damages*

Section 14.2 of the Contract provides that the prevailing party in a suit shall be entitled to recover its attorney's fees. Winston does not dispute this provision; instead, it argues only that it was entitled to prevail. We have concluded the trial court did not err in concluding that Winston breached the Contract and Blue Valley was entitled to prevail. Therefore, the trial court's award of attorney's fees to Blue Valley was not in error. Winston's fourth issue is overruled.

Similarly, Winston asserts the trial court erred in failing to award it the earnest money deposit. Under the Contract, the earnest money deposit was "immediately non-refundable and fully earned unless [the Contract was] properly terminated . . . ." Section 8.1 of the Contract provides for liquidated damages. This section states, in pertinent part:

> NOTWITHSTANDING ANYTHING TO THE CONTRARY CONTAINED IN THIS AGREEMENT, IF BUYER DEFAULTS HEREUNDER OR IF NEITHER PARTY TERMINATES THIS AGREEMENT PURSUANT TO AN EXPRESS RIGHT TO DO SO . . . SELLER MAY TERMINATE THIS AGREEMENT AND RECEIVE OR RETAIN, AS SELLER'S SOLE AND EXCLUSIVE REMEDY, THE DEPOSIT FROM THE TITLE COMPANY AS SELLER'S LIQUIDATED DAMAGES.

The foregoing establishes that under the express terms of the Contract, Blue Valley is entitled to the earnest money deposit upon Winston's default. The record reflects that Winston failed to perform the Contract because it failed to close at the designated time. Therefore, the trial court did not err in concluding that Blue Valley was entitled to recover the earnest money deposit as its liquidated damages. Winston's fifth issue is overruled.

Having resolved all of Winston's issues against it, we affirm the trial court's judgment.

130051F.P05

/Kerry P. FitzGerald/
KERRY P. FITZGERALD
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

WINSTON ACQUISITION CORP,
Appellant

No. 05-13-00051-CV          V.

BLUE VALLEY APARTMENTS, INC,
Appellee

On Appeal from the 116th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-11-01373.
Opinion delivered by Justice FitzGerald.
Justices Moseley and O'Neill participating.

      In accordance with this Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.

      It is **ORDERED** that appellee BLUE VALLEY APARTMENTS, INC. recover its costs
of this appeal from appellant WINSTON ACQUISITION CORP.

Judgment entered June 30, 2014