**Affirmed and Majority and Dissenting Opinions filed March 17, 2015.**



In The

# Fourteenth Court of Appeals

_____

## NO. 14-13-00480-CV

_____

### ARBOR WINDSOR COURT, LTD, Appellant

### V.

### WEEKLEY HOMES, LP, Appellee

**On Appeal from the 165th District Court
Harris County, Texas
Trial Court Cause No. 2009-55538**

## D I S S E N T I N G   O P I N I O N

Appellant, Arbor Windsor Court, Ltd. ("Arbor"), appeals the final judgment granting the "Motion for Entry of Judgment, *or in the Alternative*, Motion for Judgment Notwithstanding the Verdict" filed by appellee, Weekley Homes, LP. ("Weekley"). It is not clear from the final judgment which motion the trial court granted; therefore, in two issues, Arbor appeals the granting of *both* motions.

The majority affirms what it refers to as a "take-nothing judgment" in Weekley's favor, holding a notice of default provision in the agreement between Arbor and Weekley was a condition precedent to its filing suit. I do not agree that provision is a condition precedent. Further, the Majority does not address Arbor's appellate challenge to the granting of Weekley's Motion for Judgment Notwithstanding the Verdict ("JNOV"). I believe the trial court erred in awarding final judgment in Weekley's favor. Therefore, I respectfully dissent.

## I. BACKGROUND

### A. Factual Background

This suit concerns a real estate development envisioned by John Riddle, Arbor's president. After two years of negotiation with the City of Spring Valley, Arbor became the owner of the property in 2006. Arbor's concept was a development of large, upscale "patio townhomes" on small lots, all built in a coherent Georgian style. Due to the size of the project, Arbor decided to partner with an established homebuilder—Weekley.

In April 2006, Arbor and Weekley entered into an "Agreement for Sale and Purchase of Lots" ("the Agreement"). The subdivision was named "Windsor Court." Arbor secured a loan for the purchase of the land and development of the subdivision. Weekley agreed to purchase the lots on a two-year schedule set forth in the Agreement which ensured the cash flow necessary to pay for the cost of the loan ($3,850,000). Weekley paid $500,000 earnest money, deposited with Priority Title.

The Agreement provided Arbor would be responsible for the basic development of the site within sixty (60) days of the Substantial Completion Date, which under Paragraph 7 of the Agreement was to occur "no later than January 30,

2

2007." However, Weekley accepted substantial completion as of March 29, 2007. In 2007, the parties agreed that the Agreement was in "full force and effect and neither party was in default," and they acknowledged "receipt of the 'Letter of Substantial Completion' on March 29, 2007, as required by the [Agreement]."[1] After accepting substantial completion on March 29, 2007, Weekley agreed to purchase ten lots within six months and five lots every three months until October 2008. The evidence revealed Weekley purchased ten lots in April 2007, two lots in May 2008, three lots in August 2008, and two lots on December 1, 2008.

The Agreement was amended four times. The first amendment merely evidenced the name of the actual developer of the property—Arbor Windsor.[2] The second amendment changed the schedule for Weekley's purchase of lots, acknowledging that the substantial completion date was March 29, 2007. The third amendment allowed Weekley to advance funds so that the project development could continue at a time when Weekley was not current on its contractual obligation to purchase lots in the time frame set forth in the Agreement. The advanced funds totaled approximately $82,000, an amount less than the cost of any one lot in the subdivision. A portion of these advanced funds were reimbursed to Weekley at lot closings in August and December 2008.

In November 2008, the purchase of lots was not occurring as contemplated under the Agreement and second amendment, which interrupted Arbor's payments to Graham Mortgage. The interruption caused Graham Mortgage to send a notice of default to Arbor, and Graham Mortgage requested Arbor send Weekley a notice

---

[1] The delay from January to March was the result of several factors, and there was evidence that delays are not uncommon in a development of this nature.

[2] The Seller's name in the Agreement was "One Windsor Court, L.P."

of default.  Arbor discussed this with Welch, Weekley's land acquisition manager, who pleaded with Arbor that it not send a notice of default.

On November 25, 2008, Riddle presented Welch another proposal to sell the remaining lots to Weekley for a discounted price, offering the remaining *seventeen* lots for $1,920,000.  The alternative was to maintain the contract price and schedule, selling *seven* lots for $1,120,000.  Weekley did not agree to the proposal; it purchased two lots in December 2008.

The parties entered into the fourth and final amendment, signed on December 1, 2008, days after Arbor's proposal to sell the remaining lots at a discount.  Arbor acknowledged Weekley had purchased eighteen of the original 32-35 lots, and Arbor required Weekley to purchase two lots on or before December 2, 2008 and one each month beginning in January 2009, until all the lots were purchased.  Other than the two lots purchased in December 2008, Weekley did not make the agreed-upon purchases of lots in the time specified in the Agreement and the fourth amendment.

In March 2009, Graham Mortgage advised Arbor that Texas Community Bank purchased the loan.  Arbor later learned the loan had, in fact, been purchased by FETC, the entity which eventually gave Arbor notice of its intent to post the land for foreclosure.  However, prior to FETC giving Arbor notice of intent to foreclose, and acknowledging that Weekley had sold several lots during April-August 2009, Arbor proposed to Weekley that they work together to stop the pending foreclosure, with Arbor agreeing to pay Weekley's attorneys' fees.  Weekley did not to respond to the offer.

In September 2009, FETC foreclosed on the property.  Weekley appeared at the foreclosure sale and purchased the property for $1,320,000, an amount less than the cost of purchasing the seventeen lots which remained available for sale.

**B.    Procedural Background**

In late August, 2009, prior to foreclosure, Arbor sued FETC seeking affirmative relief.  Approximately four months after FETC foreclosed and Weekley purchased the property at the foreclosure sale, Weekley intervened in Arbor's suit against FETC, seeking judgment against Arbor to quiet title.  Weekley amended its petition in intervention alleging a breach-of-contract claim against Arbor, and asserting affirmative defenses.  Arbor answered Weekley's petition in intervention, amended its petition, and added additional claims against various parties.  Eventually, the only defendant at trial was Weekley.  The jury found Arbor did not send notice to Weekley and did not fail to comply with the Agreement.  The jury awarded $987,567 in actual damages and $370,337 in attorneys' fees to Arbor.  The jury found Weekley failed to comply with the Agreement and did not award damages or attorneys' fees to Weekley.

In two separate issues, Arbor appeals the final judgment in which the trial court granted Weekley's motion to enter judgment, or in the alternative, motion for JNOV.  The Majority does not address both of Arbor's complaints.  Instead, it "reorder[s]" the issues as if Arbor had complained only of the granting of the motion to enter judgment, and as noted above, the Majority refers to the final judgment as a "take-nothing judgment."  Thus, the Majority fails to address Arbor's appellate complaint as to the final judgment which granted Weekley's motion for JNOV.  I write, therefore, not only because I disagree with the manner in which the Majority characterizes the final judgment and Arbor's appellate complaints, but also because I disagree with the result.

## II. ANALYSIS OF MOTION TO ENTER JUDGMENT

The Majority holds the notice-of-default provision was a condition precedent to Arbor's breach-of-contract action and Weekley is entitled to judgment because

Arbor did not give notice. I disagree that the provision is a condition precedent and, even if it were, I disagree Weekley has shown it is entitled to judgment in its favor.

## A. Covenant or Condition Precedent?

Paragraph 17 of the Agreement provides:

Remedies and Notice. *In the event of the failure of Seller to perform any of its obligations under this Agreement* (or the determination by Purchaser that any representation or warranty by Seller hereunder is false or misleading), Purchaser shall be entitled to either (i) terminate this Agreement . . . (ii) enforce specific performance or pursue any other remedy provided by law or in equity or (iii) extend the time for performance . . . ." *In the event of the failure of Purchaser to perform pursuant to this Agreement*, and provided that Seller is not in default under any of its obligations hereunder, then, in that event, Seller shall be entitled to (i) terminate this Agreement and retain the Earnest Money . . . (ii) extend the time for performance . . . or (iii) enforce specific performance as to the purchase of [17] Lots. *Notwithstanding the foregoing, Seller and Purchaser covenant and agree, each with the other, to give fifteen (15) days' written notice of any default during which time same may be cured prior to exercise of any rights or remedies pursuant to this Agreement . . . .*

(Emphasis added).

In determining whether the language of a contract is a condition precedent, the words of the contract control. *See Criswell v. European Crossroads Shopping Ctr, Ltd.*, 792 S.W.2d 945, 948 (Tex. 1990). Generally, when performance is conditional, terms such as "if," "provided that," "on condition that," or some similar language of condition must be used. *Id*. If these particular words, or words of a similar nature, are not included in the contract, then the terms are construed as a covenant. *Id*. While there is no requirement that such phrases be utilized, their absence is probative of the parties' intention that a promise be made, rather than a

6

condition imposed.  *See Hohenberg Bros. Co. v. George E. Gibbons & Co.*, 537 S.W.2d 1, 3 (Tex. 1976).

> A condition precedent may be either a condition to the formation of a contract or to an obligation to perform an existing agreement.  *Id*. . . . Conditions precedent to an obligation to perform are those acts or events, which occur subsequently to the making of a contract, that must occur before there is a right to immediate performance and before there is a breach of contractual duty.

*Id*.  (Citations omitted).

A condition precedent is an event that must happen or a party must perform before a right can accrue to enforce an obligation.  *Azad v. MRCO, Inc.*, 14-12-00165-CV, 2013 WL 6700285, at *6 (Tex. App.—Houston [14th Dist.] Nov. 2, 2013, pet. denied) (mem. op.) (citing *Centex Corp. v. Dalton*, 840 S.W.2d 952, 956 (Tex. 1992)) (holding "once the claim has been finalized" is not conditional language, and a plain reading of the contractual provisions which avoids forfeiture is the one to be adopted).[3]  Failure to satisfy a condition precedent generally results in no liability, but failure to perform a contractual obligation may create liability. *McMahan v. Greenwood*, 108 S.W.3d 467, 484 (Tex. App.—Houston [14th Dist.] 2003, pet. denied).  Words such as "obligations and promises" do not indicate the creation of a condition precedent.  *Id*. at 485.

In construing a contract, forfeiture by finding a condition precedent is to be avoided when another reasonable reading of the contract is possible.  *Hohenberg*, 537 S.W.2d at 3; *see also Criswell*, 792 S.W.2d at 948.  When the condition would impose an absurd or impossible result, the agreement will be interpreted as creating

---

[3]  Black's Law Dictionary defines "condition precedent" as "An act or event, other than a lapse of time, that must exist or occur before a duty to perform something promised arises. Black's Law Dictionary (10th ed. 2014).  It defines "covenant" as "A formal agreement or promise, usu. in a contract or deed, to do or not do a particular act, a compact or stipulation." *Id*.

a covenant rather than a condition. *Id*. Because of their harshness in operation, conditions are not favorites of the law. *Sirtex Oil Indus., Inc. v. Erigan*, 403 S.W.2d 784, 787 (Tex. 1966); *see also Hohenberg*, 537 S.W.3d at 3.

The Majority holds the provision is a condition precedent to Arbor's breach-of-contract action, even though the provision lacks words commonly used to create a condition. In doing so, the Majority imposes a forfeiture of Arbor's rights which operates as a windfall to Weekley. *See Solar Application Eng'g, Inc. v. T.A. Operating Corp.*, 327 S.W.3d 104, 110 (Tex. 2010) (citing Restatement (Second) of Contracts § 227, cmt. d (1981) (Section 227(2) favors "an interpretation that . . . avoids the harsh results that might otherwise result from the non-occurrence of a condition and still gives adequate protection to the obligor.")).

Interestingly, the Majority relies on *Solar* for the proposition that "the conditional language must connect the condition precedent to the conditioned obligation." Yet, in *Solar*, the Supreme Court of Texas held a lien-release was a *covenant*, not a condition precedent to payment, even though there was "if/then" language which could signal a condition precedent. *See id*. However, a conclusion that payment was "conditioned" on a lien-release provision would operate as forfeiture which *Solar* avoided. *Id*. "In the absence of any conditional language, a reasonable reading of the lien-release provision is that it is a promise or covenant by Solar to provide a lien-release affidavit in exchange for receiving final payment. This interpretation avoids forfeiture and completes the contract." *See id*. at 109–110.

Here, a reasonable interpretation of the notice provision which would avoid forfeiture is that notice was to be given for the purpose of curing default and, if default was not or could not be cured, then Arbor could pursue the remedies *set out in the Agreement*. The Majority's interpretation is unreasonable and works a

forfeiture because neither the curing of Weekley's default was possible, nor was Arbor's ability to seek the remedies under the Agreement.

To hold that "Seller and Purchaser covenant and agree" is a condition precedent ignores the plain words used. The language does not set up an event which must occur before there is a right to performance. *See Hohenberg*, 537 S.W.2d at 3. At best, the language sets a timeframe for a party to cure a default, prior to pursuing the return/release of earnest money, extending time for performance, or seeking specific performance. Further, the provision does not preclude a breach-of-contract action in the event there is no notice—it merely requires that the defaulting party cure the default before the non-defaulting party pursues the remedies in the Agreement. *See Hirschfeld Steel Co., Inc. v. Kellogg Brown & Root, Inc.*, 201 S.W.3d 272, 279, 281–82 (Tex. App.—Houston [14th Dist.] 2006, no pet.) (holding that providing maintenance program "as a condition of the ten year warranty" was not a condition precedent because there was no language stating seller's nonperformance of the maintenance program would void purchaser's warranty); *see also Wright v. Modern Group, Ltd.*, No. 13-12-00293, 2013 WL 4714930, at *6–7 (Tex. App.—Corpus Christi Aug. 30, 2013, pet. denied) (mem. op.) (holding that obligation to pay former employees conditioned on a "qualifying event" was a condition precedent—interpreting that company's payment not due employees unless a condition [sale of controlling interest in the company] occurred); *Evadale Water Control and Improvement Dist. No. 1 v. J & D Constr.*, No. 09-09-00062-CV, 2010 WL 3518226, at * 4–5 (Tex. App.—Beaumont Sept. 9, 2010) (mem. op.) (concluding phrase "retainage . . . shall not be paid [by District] to the Contractor until the [Governmental Board] has authorized a reduction in . . . retainage on the contract work" set up a condition precedent); *Cal-Tex Lumber Co., Inc. v. Owens Handle Co., Inc.*, 989 S.W.2d 802, 809 (Tex.

9

App.—Tyler 1999, no pet.) (holding language that party "'covenants and agrees'" to provide insurance was condition precedent to the *beginning* of operations under the agreement, but not as to one of the duties included in the agreement); *Marsh v. Marsh*, 949 S.W.2d 734, 744 (Tex. App.—Houston [14th Dist.] 1997, no pet.) (holding that construing the phrase "unless such [gift] taxes are paid" as a condition precedent to performance under agreement would render performance impossible because taxes could not be paid until after gifts were transferred).

To support its holding that "covenant and agree" is a condition precedent to Arbor's breach-of-contract action, the Majority ignores the rationale for notice of default being delivered; that is, to give the defaulting party fifteen days to cure the default. *See Dorsett v. Cross*, 106 S.W.3d 213, 217 (Tex. App.—Houston [1st Dist.] 2003, pet. denied) (noting that when the obligation of one party depends on a condition being performed, and fulfillment of the condition is prevented by the other party, the condition is considered fulfilled). Here, after Weekley intervened in Arbor's suit against FETC, and Arbor answered and sued Weekley, the property had been foreclosed on, Weekley purchased the property, and Arbor no longer possessed any interest in it. Thus, insisting Arbor give Weekley notice of default prior to filing suit, when it no longer owned the development, is unworkable, unreasonable and operates as a forfeiture. In my view, holding that Arbor could not file its breach-of-contract suit unless and until it gave notice of default incentivizes Weekley's conduct which Arbor alleged violated the Agreement. *See: Zachry v. Port of Houston Auth. of Harris County*, 449 S.W.3d 98, 116 (Tex. 2014) (refusing to enforce a provision which operated to allow one party to intentionally injure another without remedy).

But, even if notice of default were a condition precedent, it is only a condition precedent to Arbor's pursuing rights or remedies *pursuant to the*

*Agreement.* Those remedies included the following: termination of the Agreement and retainage of the earnest money; extending the time for performance as may be mutually agreed upon; or enforcing specific performance as to the purchase of the seventeen remaining lots. Thus, a rational and reasonable interpretation of the Agreement is that the parties agreed to provide notice of default only to allow cure prior to exercising a remedy under the Agreement. Contrary to the Majority's interpretation, this interpretation does not result in forfeiture. Further, the Majority would require Arbor to give notice to Weekley at a time after the property had fallen into foreclosure, thus effectively terminating the Agreement and any of Arbor's rights or remedies contained in the Agreement.[4]

The Majority writes that "language construed by courts to be mere covenants without condition is wholly distinguishable," relying on *Amir v. International Bank of Commerce*, 419 S.W.3d 687, 693 (Tex. App.—Houston [1st Dist.] 2013, no pet.). The arbitration agreement in *Amir* contained *no* language that would make the sharing of arbitrator's fees, costs and expenses a condition on the party's right to demand arbitration. Further, in terms of notice, the *Amir* court reviewed the following language:

> *if* one party files suit outside of arbitration, [then] the other party can invoke their right to arbitration by providing 'timely written notice of intent to arbitrate.'

*Amir*, 419 S.W.3d at 692 (Emphasis added).

The bank argued it never received "written notice of intent to arbitrate," even though Amir had filed a motion to compel arbitration and served the bank with the motion. *Id*. at 692. *Amir* held that the bank's notice of Amir's intent to arbitrate satisfied this "condition precedent." *Id*. at 693. There was no such

---

[4] Weekley purchased the property at the foreclosure sale; thus, Arbor had no rights attendant to the development.

11

"if/then" language in the Agreement between Arbor and Weekley. A reasonable interpretation in providing notice of default was to allow Weekley the opportunity to cure, before resorting to remedies pursuant to the Agreement. However, that interpretation is neither possible nor reasonable.

The Majority holds the language employed in the Agreement is "more like 'unless' conditional language," citing *Dallas Berkshire Partners, Ltd. v. James French Photography, Inc.*, No. 05-98-01352-CV, 2001 WL 200144, at *5 (Tex. App.—Dallas Mar. 1, 2001, pet. denied) (not designated for publication). The lease language reviewed in *Dallas Berkshire* provided:

> In the event of any default by Landlord under this lease which would give Tenant the right to terminate this Lease, to abate rent or to exercise any other remedy against Landlord, Tenant shall not exercise any such remedy unless Tenant gives Landord written notice specifically describing Landlord's default and Landlord fails to cure such default within 30 days after receipt of such notice . . . .

The court held the provision was a condition precedent because its purpose was to allow the Landlord time to cure any default before the Tenant could exercise the remedies set out in the lease. *Id.* Arbor's suit for breach of contract—responding to Weekley's petition in intervention—was not a remedy set out in the Agreement; thus, notice was not a condition precedent to filing suit.

The Majority then rationalizes its conclusion by reference to Paragraphs 2 and 7 of the Agreement, stating Paragraph 2 "tends to confirm an Agreement" that Arbor may not obtain one of the contracted remedies unless and until it swears it has given Weekley notice and an opportunity to cure. Paragraph 2 provides that if Weekley is in default, then before earnest money is released, Arbor must allow Weekley to cure its default. This provision relates only to the release of earnest money and cannot be used as support for the Majority's holding that the Paragraph 17 "notice" is a condition precedent to Arbor's breach-of-contract suit. *See*

12

*Landscape Design and Constr., Inc. v. Harold Thomas Excavating, Inc.*, 604 S.W.2d 374, 377 (Tex. Civ. App.—Dallas 1980, writ ref'd n.r.e.) (holding language will not be construed as a condition precedent when another reading of the contract is possible). The *Landscape* court reviewed five contractual provisions and noted that "time is of the essence" and agreement to "complete the work . . . within ten days" was a covenant because there was no language conditioning payment on the ten-day provision; thus, even though there was no conditional language, completion of the work was the only condition precedent to payment. *Id.* Here, there is another reading of the contract that is possible, precluding the Majority's holding that the "covenant and agree" notice provision is a condition precedent.

Further, relying on Paragraph 7 of the Agreement, the Majority holds Weekley's silence is deemed agreement, and that this contractual language demonstrates how the parties drafted a provision to avoid a condition precedent. Paragraph 7, entitled "Substantial Completion," contains the following:

> [T]he failure of Purchaser [Weekley] to so notify Seller [Arbor] within such fifteen (15) day period shall be deemed to be Purchaser's agreement that all conditions to Substantial Completion have been satisfied and that Substantial Completion has occurred. . . .
>
> Notwithstanding the foregoing, Purchaser shall have the right to purchase any Lot prior to the Substantial Completion Date, but the same shall not relieve Seller from its covenants and obligations to satisfy the aforementioned requirements for such Lot or Lots in accordance with the terms of this Agreement.

The Majority then concludes this provision demonstrates that the parties knew how to draft a provision to avoid a condition precedent. However, also included in Paragraph 7, between the two provisions set forth above, is a "notice" provision:

If Purchaser gives Seller notice of any material condition of Substantial Completion which has not occurred or been performed in Purchaser's reasonable opinion, Seller shall within ninety (90) days correct any work or defect . . . .  In the event Seller is unable to cure purchaser's objections . . ., Seller shall immediately so notify Purchaser in writing, whereupon Purchaser shall elect . . . within ten (10) days after Purchaser's receipt of Seller's notice, to either: (i) extend the time for Seller to cure . . . (ii) enforce specific performance of all obligations of Seller . . . or (iii) terminate this Agreement . . .

While I do not believe this language is a condition precedent, I would note it is the *same type of notice language* found in Paragraph 17, which the Majority finds *is* a condition precedent.  Further, without expressing any opinion on the parties' ability to draft an agreement, I disagree this language evidences that the parties knew how to draft a paragraph to avoid a condition precedent and that they chose to impose a condition precedent in Paragraph 17.

In sum, there is no language which explicitly states the parties' intention that notice of default was a condition precedent to Arbor's suit for breach of contract. *See TransTexas Gas Corp. v. Forcenergy Onshore, Inc.*, No. 13-02-387-CV, 2004 WL 1901717, at *8 (Tex. App.—Corpus Christi, Aug. 26, 2004, pet. denied) (mem. op.).  In *TransTexas*, three agreements were construed together. *Id*. at *1, 5. The Letter Exchange Agreement provided that the parties "understood and agreed" that TransTexas must reassign within three years, and if it did not, the only remedy was specific performance or breach of contract. *Id*. at *1.  Forcenergy urged that the "subject to" language in the Assignment of Oil, Gas and Mineral Lease, when read in conjunction with the Letter Exchange Agreement, imposes conditions. *Id*. at *6–7.  As the Majority notes, the *TransTexas* court held that the parties knew how to draft a condition precedent. *Id*. at *8.  However, in *TransTexas*, there was another "reasonable reading" of the Letter Exchange Agreement that the parties

intended it as a covenant, not a condition. *See id.* at \*8 (citing *Schwarz-Jordan, Inc., of Houston v. Delisle Constr. Co.*, 569 S.W.2d 878, 881 (Tex. 1978)).

I believe the same result should be reached here. There is a reasonable interpretation which does not operate as a forfeiture; thus, in the absence of conditional language, the provision must be construed as a covenant, not a condition precedent. *See Chambers v. Hunt Petroleum Corp.*, 320 S.W.3d 578, 584 (Tex. App.—Tyler 2010, no pet.) (concluding a provision in a lease requiring that lessee pays all taxes is a covenant because construing it as a condition precedent is only appropriate unless there is language that may be construed in no other way).

Finally, the Majority notes that abatement is generally the proper remedy for failure to provide notice of default and an opportunity to cure, citing *Shafighi v. Texas Farmers Insurance Co.*, No. 14-12-00082-CV, 2013 WL 1803609, at \*5 (Tex. App.—Houston [14th Dist.] Apr. 30, 2014, no pet.) (mem. op.). I would note Weekley never raised lack of notice of default or sought abatement prior to trial, and it has shown no harm resulting from lack of notice of default. *See Lennar Corp. v. Markel Am. Ins. Co.*, 413 S.W.3d 750, 756 (Tex. 2013); *Fin. Indus. Corp. v. XL Specialty Inc. Co.*, 285 S.W.3d 877, 877–78 (Tex. 2009) (concluding insurer may not deny coverage without a showing that the insured's failure to give written notice was prejudicial to the insurer—such failure was not a material breach); *PAJ, Inc. v. Hanover Ins. Co.*, 243 S.W.3d 630, 634–35 (Tex. 2008) (holding even if the notice provision is a condition precedent to coverage, the insurer must show it was prejudiced by not receiving notice).

Finally, the Majority states that we must "assume for this case, as have the parties, that Arbor may not recover in breach of contract if it failed to perform an unexcused condition precedent." Arbor never made such a concession. In arguing

the final judgment was improper, Arbor maintained the condition precedent question was never appropriate with respect to its breach-of-contract action.

## B.    Is Weekley Entitled to Judgment?

The Majority holds Weekley is entitled to judgment because Arbor failed to obtain a jury finding on excuse.  I disagree.  The jury found Arbor did not fail to comply with the Agreement.  The instruction accompanying that question stated that Arbor was excused from complying if the failure to comply was not material, was waived, if Weekley anticipatorily repudiated the agreement, or if Weekley was estopped from complaining of Arbor's alleged failure to comply.  The Majority holds that the jury's finding that Arbor did not fail to comply is not a positive finding that it complied with the contract because the jury's "no" answer could mean simply that Weekley did not meet its burden of proof on that question.  The Majority then analyzes this jury finding in light of Texas Rule of Civil Procedure 279 and *DiGiuseppe v. Lawler*, 269 S.W.3d 588 (Tex. 2008), holding Arbor had the burden to prove excuse.  While this would be an accurate holding had the notice provision been a condition precedent to Arbor's recovery, I do not believe this analysis is correct here.

In *DiGiuseppe*, the inquiry was whether a finding that DiGuiseppe "complied with the contract" could be considered a finding on an *essential element* of the claim for specific performance; that is, whether DiGiuseppe was "ready, willing, and able to perform" the contract.  *Id*. at 593.  Being "ready, willing, and able to perform" is an essential element of the claim for specific performance.  *Id*.  Here, any finding on excuse is essential only if the notice provision is found to be a condition precedent, which I would hold it is not.[5]

_____

[5]   Additionally, if this provision were a condition precedent, I believe that the existence

16

Further, the Majority is incorrect to affirm judgment in Weekley's favor because in the trial court Weekley did not argue the evidence was factually or legally insufficient to support jury's finding in answer to Question 3 that Weekley failed to comply with the Agreement.[6] Weekley's motion for judgment on the verdict, therefore, limits any sufficiency argument with respect to Question 3 because it did not seek to disregard the unfavorable finding.[7] *See Menchaca v. Bishop*, No. 14-94-00480-CV, 1996 WL 170272, at *1 (Tex. App.—Houston [14th Dist.] Apr. 11, 1996, no pet.) (not designated for publication) (holding when a party moved for judgment, that motion is considered "an acquiescense in the verdict, which will foreclose a subsequent attack on appeal." (citations omitted)). While we agree with the Majority that we may not guess how the jury reached its verdict, the jury's answers to Questions 3 and 4 must be given meaning, considering the state of the record as a whole. *See 7979 Airport Garage, L.L.C. v. Dollar Rent a Car Sys., Inc.*, 245 S.W.3d 488, 504–05 (Tex. App.—Houston [14th

---

of Arbor's "failure to comply" question and accompanying instruction put Weekley on notice of another method as to how Arbor could be excused, if such were necessary; therefore, it could be construed as "necessarily referable" to the defense of excuse

[6] Question 3 asked:

Did Weekley Homes fail to comply with the agreement?

You are instructed that Weekley Homes is excused from complying if the failure, if any, was

1.  not material, or

2.  was waived, or

3.  if Arbor Windsor Court anticipatorily repudiated the agreement or

4.  if Arbor Windsor Court is estopped from complaining of Weekley's failure to comply with the agreement.

Answer "Yes" or "No."

Answer: Yes

[7] Weekley's motion for JNOV challenged only the lost profits and the exclusivity-of-remedies arguments.

Dist.] 2007, pet. denied) (holding appellate court may not ignore jury answers where they can be "reconciled in light of the pleadings and evidence, the manner of submission, and the other findings considered as a whole.") "When the questions are amenable to more than one reasonable construction, we adopt the construction that avoids conflict." *See Jabri v. Alsayyed*, 145 S.W.3d 660, 668 (Tex. App.—Houston [14th Dist.] 2004, no pet.).

Additionally, I would hold the trial court erred in granting Weekley's motion to enter judgment on the verdict and sustain appellant's second issue.

### III. ANALYSIS OF MOTION FOR JNOV

I also dissent because the Majority does not address Arbor's appellate complaint concerning the "alternative relief" in the final judgment. This issue must be addressed because it is unclear from the final judgment what relief the trial court intended to grant. *See In re United Scaffolding, Inc.*, 377 S.W.3d 685, 690 (Tex. 2012) (disapproving of "and/or" language because it leads to ambiguity and confusion).

### A. Standard of Review

We review a JNOV under a no-evidence standard, meaning we "credit evidence favoring the jury verdict if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not." *Tanner v. Nationwide Mut. Fire Ins. Co.*, 289 S.W.3d 828, 830 (Tex. 2009) (citing *City of Keller v. Wilson*, 168 S.W.23d 802, 823 (Tex. 2005); *Cent. Ready Mix Contrete Co. v. Islas*, 228 S.W.3d 649, 651 (Tex. 2007)). Our review is for legal sufficiency of the evidence supporting the verdict, keeping in mind that it is the jury's sole province to evaluate the credibility of witnesses and to determine the weight attached to it. *See Envtl. Procedures, Inc. v. Guidry*, 282 S.W.3d 602, 626 (Tex. App.—Houston

18

[14th Dist.] 2009, pet. denied).  We review the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it.  *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005).  We credit favorable evidence if a reasonable fact finder could and disregard contrary evidence unless a reasonable fact finder could not.  *Id*. at 820.  The evidence is legally sufficient if it would enable a reasonable and fair-minded person to reach the verdict under review.

We cannot substitute our judgment for that of the jury if the evidence falls within the "zone of reasonable disagreement."  *Id*.  We will uphold the jury's finding if more than a scintilla of competent evidence supports it and affirm the JNOV only when there is no evidence to support the jury's finding or if the evidence establishes a contrary answer as a matter of law.  *See Tanner*, 289 S.W.3d at 830; *Hester v. Friedkin Cos., Inc.*, 132 S.W.3d 100, 105 (Tex. App.—Houston [14th Dist.] 2004, pet. denied).

**B.    Did the Agreement Provide Exclusive Remedies?**

Arbor argues that JNOV was improper because the remedies are not exclusive; specifically, Arbor argues, and the jury found, Arbor was not required to accept as damages the $500,000 in earnest money in lieu of asserting the common law breach-of-contract remedy.  Weekley argued that the remedies set forth in Paragraph 17 (quoted above) are the exclusive remedies available to Arbor, which precluded its breach-of-contract action.  Weekley argued the provision allowed Weekley to "pursue any other remedy provided by law or in equity," but did not provide that same option to Arbor.

Remedies set forth in a contract may be either permissive or exclusive.  *See Pelto Oil Corp. v. CSX Oil & Gas Corp.*, 804 S.W.2d 583, 586 (Tex. App.—Houston [1st Dist.] 1991, writ denied); *Vandergriff Chevrolet Co., Inc. v. Forum*

19

*Bank*, 613 S.W.2d 68, 70 (Tex. Civ. App.—Fort Worth 1981, no writ). "A construction which renders the specified remedy exclusive should not be made unless the intent of the parties that it be exclusive is clearly indicated or declared." *Id*. Every clause must be given meaning, viewed objectively rather than subjectively. *Id*. Unless it is clear that the parties intended that a particular remedy in the contract is exclusive, a party may pursue any remedy which the law affords in addition to the remedies set forth in the contract. *See 4N Int'l, Co. v. Metro. Transit Auth.*, 56 S.W.3d 860, 863 (Tex. App.—Houston [1st Dist.] 2001, pet denied) (citing *Accent Builders Co. v. Sw. Concrete Sys.*, 679 S.W.2d 106, 109 (Tex. App.—Dallas 1984, writ ref'd n.r.e.)).

The mere fact that a contract provides a particular remedy or set of remedies does not preclude other remedies, unless there is language which evidences the parties' intent that a particular remedy is the exclusive one. *See Bifano v. Young*, 665 S.W.2d 536, 539 (Tex. App.—Corpus Christi 1983, writ ref'd n.r.e.) (holding where lease agreement provided landlord "shall" terminate the lease, or pursue two other alternate remedies which the parties had marked through and eliminated, landlord was not foreclosed from pursuing common law remedy for breach of the lease agreement); *see also Winston Acquisition Corp. v. Blue Valley Apartments, Inc.*, 436 S.W.3d 423, 430 (Tex. App.—Dallas Jun. 30, 2014, no pet.) (holding that the language "seller may terminate this agreement and receive or retain, as seller's sole and exclusive remedy, the deposit from the title company as seller's liquidated damages" entitled seller to receive those funds as its exclusive remedy); *Crow-Billingsley Stover Creek, Ltd. v. McKinney Partners, L.P.*, No. 05-09-00962-CV, 2011 WL 3278520, at *7–8 (Tex. App.—Dallas Aug. 2, 2011, no pet.) (mem. op.) (holding that by using the terms "sole and exclusive remedy," the parties intended that recovery of earnest money was the only remedy, thus precluding a breach-of-

20

contract action); *Ganske v. WRS Group, Inc.*, No. 10-06-00050-CV, 2007 WL 1147357, at * 3–4 (Tex. App.—Waco Apr. 18, 2007, no pet.) (mem. op.) (holding that even where terms of agreement provided parties "shall" be entitled to specific performance or injunctive relief or both, those remedies did not preclude a breach-of-contract suit); *Allen v. King*, No. 12-03-00140, 2004 WL 252097, at * 2 (Tex. App.—Tyler Feb. 11, 2004, no pet.) (mem. op.) (concluding where there is no language indicating parties intended contractual remedies were exclusive, a party can pursue any action available in order to obtain a remedy).

Weekley relied on *Myriad Development, Inc. v. Alltech, Inc.*, 817 F.Supp. 2d 946, 964 (W.D. Texas 2011), which analyzed an agreement with two provisions for remedies in the event of "default" and "breach." The court held the two provisions could be harmonized if the "default" as used in one paragraph meant "material breach" and that the term "breach" in the second paragraph meant "immaterial breach." *Id*. Under this interpretation, Myriad had the right to either "(1) treat the material breach as a total breach and cease performance under the contract, or (2) treat the material breach as a partial breach, continue performance under the contract, and sue for damages caused by the breach." *Id*. Thus, Myriad was *permitted* to cancel the contract, but was not *required* to do so, demonstrating it was not an exclusive remedy. *Id*. However, once Myriad chose to cancel the contract, it was limited to the remedy of cancellation because the contract provided: "In the event of any default . . . cancellation *shall* be the *sole* remedy available to either party. . . ." *Id*. at 958, 966. (Emphasis added). Clearly, cancellation became the exclusive remedy because the agreement stated it was the sole remedy. *See id*. at 966.

There is no similar language in the Agreement between Arbor and Weekley. *See DiGiuseppe,* 269 S.W.3d at 597 (noting that, where party expressly waived any

21

right to claim damages, remedies were limited to either terminating contract and receiving refund of earnest money or seeking to enforce specific performance); *Fawcett, Ltd. v. Idaho Northern & Pac. R.R. Co.*, 293 S.W.3d 240, 248 (Tex. App.—Eastland 2009, pet. denied) (confirming that where the parties crafted a default provision to be the "sole and exclusive remedy," it presented the only remedies afforded); *Bifano*, 665 S.W.2d at 539 (holding that even where agreement provided landlord "shall" have the option to pursue any one or more remedies, the remedies were not exclusive); *Ganske*, 2007 WL 1147357, at *3–4 (holding language is not exclusive because no language stating it is exclusive, even where agreement provided the "parties shall be entitled to specific performance hereof or injunctive relief . . . ."); *Allen*, 2004 WL 252097, at *1, 3 (concluding that agreement providing purchaser "shall" be allowed time to cure and, if there is no cure, agreement "shall terminate and be void" does not preclude remedy for breach of contract).

Here, the Agreement provided that in the event of a default, both Arbor and Weekley "shall" do one of the following: choose to terminate the Agreement and retain (or be awarded) the Earnest Money; seek specific performance; or extend the time for performance. The Agreement also provided that Weekley "shall" be entitled to "pursue any other remedy provided by law or in equity." There was no similar provision for Arbor's remedies. The optional remedies afforded Weekley did not render those offered to Arbor "sole and exclusive" because that language is not found in the Agreement. "The mere fact that the contract includes a particular remedy does not mean that such remedy is exclusive." *See Myriad Dev.*, 817 F.Supp.2d at 964.

Therefore, because Paragraph 17 did not state that the remedies to be afforded either of the parties were the "sole and exclusive" remedies either could

22

utilize in the event of a breach, and there was no additional language limiting remedies to those in the contract, I would hold Arbor was entitled to maintain its breach-of-contract action.

## C.     Was there Factually or Legally-Sufficient Evidence of Damages?

Arbor next asserts the JNOV was improper because it is entitled to, and there is evidence of, the actual damages the jury awarded.  Further, Arbor argues it was not limited to retaining the earnest money of $500,000 as liquidated damages; that is, it was entitled to pursue its common law remedy and recover "benefit of the bargain" damages.  In its motion for JNOV, Weekley argued that there was no evidence to support the jury's determination of damages; however, it does not make that argument on appeal.  Rather, *here* Weekley contends only the jury's finding that Arbor did not make an informed election of remedies is incorrect as a matter of law; that is, election of remedies forecloses the recovery of actual damages.  I will address both arguments.

On the issue of damages, the jury heard the testimony of Arbor's expert, Scott C. Mitchell, C.P.A.  In his report, Mitchell outlined his calculation of damages.  He noted fifteen of thirty-five lots remained unsold as of the date of foreclosure, September 1, 2009.  Fourteen of the lots were priced at $140,000; one was priced at $170,000.  The lost revenue from those lots was calculated to be $2,130,000.  Mitchell determined that the interest accrual on this lost revenue was $987,854.  Therefore, his gross damages calculation was $3,117,854.  He then deducted from that total the amount of earnest money ($500,000) and the relief of the indebtedness on the loan ($1,225,391), resulting in "net damages" of $1,392,463.  Mitchell also noted that a reduction of $355,062 which represented interest at 8% on the lost revenue figure from the date of foreclosure to the date of

trial would reduce the total damages figure to $1,037,401.[8] He did not necessarily agree that reduction was necessary, but he included it in his report at the request of Riddle. Weekley cross-examined Mitchell, but did not offer any expert witness on its behalf.

In Question 7, the jury was asked to determine what sum of money would compensate Arbor for Weekley's failure to comply. Lost profits were defined as those profits that were a natural consequence of Weekley's failure to comply, "less the cost, if any, required to complete performance under the Agreement." "Recovery of lost profits does not require that the loss be susceptible to exact calculation." *Parkway Dental Assoc., P.A. v. Ho & Huang Prop., L.P.*, 391 S.W.3d 596, 608 (Tex. App.—Houston [14th Dist.] 2012, no pet.). Lost profits reflect the amount of damages for the loss of net income to a business, less expenses attributable to that business activity. *See id.* (citing *Miga v. Jensen*, 96 S.W.3d 207, 213 (Tex. 2002)). Mitchell calculated the amount of damages based upon the cost of the unsold lots, plus interest on that amount, less the reduction of the indebtedness and earnest money. The jury found damages in the amount of $989,567. This award was within the range of damages Arbor sought. In fact, this figure represented the total amount of damages Arbor sought, less the amounts of ad valorem taxes and unreimbursed expenses Weekley claimed it had advanced on Arbor's behalf. The trier of fact has discretion to award damages within the range of evidence presented at trial. *City of Houston v. Harris County Outdoor Adver. Ass'n*, 879 S.W.2d 322, 334 (Tex. App.—Houston [14th Dist.] 1994, writ denied). Thus, I conclude that legally-sufficient evidence supports the jury's award of damages.

---

[8] Welch testified the damages calculation did not give "credit" for all interest that had accrued; however, he did not attach a valuation to that opinion.

24

## D.     Election of Remedies

Also in its motion for JNOV, Weekley asserted the Agreement provided exclusive remedies, that Arbor retained the earnest money; and, therefore, it "is estopped from arguing to the contrary. The gist of Weekley's argument on appeal is apparently that Arbor elected to terminate the contract and retain the earnest money; therefore, it could not elect to pursue damages in its breach-of-contract suit. In fact, Weekley contends that Question 6 "assumed" Arbor made such an election and that the jury's "no" answer is incorrect as a matter of law. I disagree.

As discussed above, the Agreement did not preclude Arbor from pursuing its common law remedy for breach of contract because none of the different remedial options provided to Weekley and Arbor were written as "sole and exclusive." Thus, one option available to Arbor was to "terminate this Agreement and retain the Earnest Money as liquidated damages." However, there was no provision in the Agreement by which Arbor was required to do so.

> The core purpose of the election-of-remedies doctrine seems to be to prevent a party from abusing the judicial process by obtaining a recovery against one defendant by asserting one set of facts and then later suing a second defendant seeking recovery by denying the alleged facts upon which the party recovered in the first suit. Because its purpose is different than the one-satisfaction rule, the election-of-remedies doctrine, when it applies, bars subsequent claims even if the recovery sought in the subsequent case when added to the past recovery would not exceed the amount of the plaintiff's loss.

*Horizon Offshore Contractors, Inc. v. Aon Risk Servs. of Tex,, Inc.*, 283 S.W.3d 53, 60 (Tex. App.—Houston [14th Dist.] 2009, pet. denied).

Election of remedies requires that a party is choosing one of two inconsistent but coexistent modes of procedure and relief. *Krobar Drilling, L.L.C. v. Ormiston*, 426 S.W.3d 107, 113 (Tex. App.—Houston [1st Dist.] 2012, pet. denied). The

election-of-remedies defense operates to preclude relief when (1) a party successfully exercises an informed choice (2) between two or more remedies, rights or states of facts (3) which are so inconsistent as to (4) constitute manifest injustice. *Bocanegra v. Aetna Life Ins. Co.*, 605 S.W.2d 848, 850 (Tex. 1980). Remedies are inconsistent when one of the remedies results from *affirming* the transaction and the other results from *disaffirming* the transaction. *Id.* (citing *Foley v. Parlier*, 68 S.W.3d 870, 882 (Tex. App.—Fort Worth 2002, no writ) (Emphasis added)). Election of remedies is intended "to prevent a party who has obtained a specific form of remedy from obtaining a different and inconsistent remedy for the same wrong." *Krobar Drilling*, 426 S.W.3d at 113 (citing *Fina Supply, Inc. v. Abilene Nat'l Bank*, 726 S.W.2d 57, 541 (Tex. 1987)).

I would hold, therefore, the Agreement did not provide that any remedy was "sole and exclusive" and Arbor was entitled to seek damages in its breach-of-contract action, which was not inconsistent with any other remedy. As a result, there was no election of remedies as a matter of law. Arbor did not choose one of the non-exclusive options set forth in the Agreement. Rather, Arbor chose to sue to recover damages occasioned by Weekley's breach of contract.

In sum, I would sustain appellant's first issue.

## IV. CONCLUSION

I respectfully dissent because I construe the notice provision as a covenant, not a condition precedent. The Majority's construction of the provision as a condition creates a result which is unreasonable and operates as a forfeiture—all of which are to be avoided when a reasonable interpretation exists, as it does here. Therefore, to the extent the final judgment may be construed as the trial court granting Weekley's motion to enter judgment, I would hold the trial court erred in awarding judgment in Weekley's favor.

Additionally, I believe the Majority is required to analyze the portion of the final judgment which can be construed as granting Weekley's JNOV. I would hold the trial court erred in granting that relief because the remedies provision was not exclusive, and there was evidence to support the jury's award of lost profits damages and attorneys' fees.

Accordingly, I would sustain both of appellant's issues, reverse the trial court's judgment, and render judgment that Arbor recover the following: actual damages in the amount of $987,567; attorneys' fees in the amount of $245,337 incurred for representation in the trial court; $50,000 in attorneys' fees for its successful appeal to the court of appeals; $25,000 in the event that Weekley files a petition for review in the Supreme Court of Texas; $25,000 for preparation of a brief on the merits in the Supreme Court of Texas; and $25,000 for oral argument and completion of all proceedings in the Supreme Court of Texas, all conditioned on Arbor's success on appeal, plus court costs and post-judgment interest as allowed by law.

/s/    John Donovan
       Justice

Panel consists of Justices McCally, Busby, and Donovan (McCally, J. majority).